J-A01041-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MICHAEL ANTHONY PERSAUD | : | |
| | : | |
| Appellant | : | No. 1521 MDA 2020 |

Appeal from the PCRA Order Entered October 8, 2020
In the Court of Common Pleas of Lebanon County Criminal Division at
No(s): CP-38-CR-0002009-2016

BEFORE:  LAZARUS, J., NICHOLS, J., and KING, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED:  MARCH 15, 2022**

Michael Anthony Persaud appeals, *pro se*, from the order, entered in the Court of Common Pleas of Lebanon County, denying his petition filed pursuant to the Post-Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  Upon review, we affirm.

On August 9, 2017, following a jury trial, Persaud was convicted of possession of a controlled substance,[1] possession with the intent to deliver a controlled substance (PWID),[2] criminal conspiracy to commit PWID,[3] criminal

---

[1] 35 P.S. § 780-113(a)(16).

[2] *Id.* at (a)(30).

[3] 18 Pa.C.S.A. § 903(a).

use of communication facility,[4] and possession of drug paraphernalia.[5] Persaud was initially sentenced to pay fines and costs, and serve an aggregate term of imprisonment of 96 months to 30 years. However, after consideration of post-sentence motions and a subsequent hearing, the trial court re-sentenced Persaud to an aggregate sentence of 84 months to 25 years in prison, as well as to pay costs and fines. Additionally, Persaud was determined to be eligible for a Recidivism Risk Reduction Incentive (RRRI)[6] minimum sentence of 63 months. The trial court imposed Persaud's sentence consecutively to his federal convictions in Rhode Island.[7]

Subsequently, Persaud filed a timely, *pro se*, notice of appeal to this Court and, on September 6, 2019, we affirmed Persaud's judgment of sentence. **See Commonwealth v. Persaud**, 221 A.3d 1232 (Pa. Super. 2019) (unpublished memorandum decision).[8]

---

[4] **Id.** at § 7512(a).

[5] 35 P.S. § 780-113(a)(32).

[6] **See** 51 Pa.C.S.A. §§ 4501-12 (RRRI Act).

[7] Following his jury trial, and prior to sentencing, Persaud pled guilty to federal charges in Rhode Island.

[8] On direct appeal, Persaud was represented by Harry W. Fenton, Esquire. However, Persaud filed numerous *pro se* filings and, ultimately, Attorney Fenton sought to withdraw from representation pursuant to **Anders v. California**, 38 U.S. 738 (1967) and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009). After determining that no non-frivolous issues existed, this Court granted Attorney Fenton's application to withdraw. **See Persaud**, **supra**.

On October 17, 2017, Persaud timely filed a *pro se* PCRA petition. On November 20, 2019, the PCRA court denied Persaud's PCRA petition.[9] Persaud filed a motion for reconsideration, and subsequently, on December 12, 2019, the PCRA court vacated its order denying Persaud's PCRA petition and appointed John Ferry, Esquire, to represent Persaud. On February 10, 2020, Attorney Ferry filed a **Turner**/**Finley**[10] no-merit letter and an accompanying application to withdraw from representation.

On April 1, 2020, in response to Attorney Ferry's application, Persaud filed a *pro se* motion for leave to proceed *pro se*. In his motion, Persaud requested to proceed *pro se* on appeal, and sought an enlargement of time to file an amended PCRA petition, as well as, discovery. On April 20, 2020, the PCRA court conducted a hearing on Attorney Ferry's application to withdraw. During the hearing it became apparent that Attorney Ferry had not received a copy of Persaud's *pro se* motion for leave to proceed *pro se*. Accordingly, the PCRA court postponed the hearing for Attorney Ferry to speak with Persaud regarding his claims, "and to confirm whether there was anything more they needed to discuss, to ensure nothing [wa]s rushed and determine whether [Persaud] would be represented." PCRA Court Opinion, 3/1/21, at 8.

_____

[9] Persaud, despite filing a motion to reconsider, also filed a notice of appeal from this order with this Court. However, after Attorney Ferry was appointed, Persaud, through Attorney Ferry, discontinued his appeal.

[10] **Commonwealth v. Turner**, 554 A.2d 927 (Pa. 1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (en banc).

- 3 -

After a conference with Persaud, Attorney Ferry filed another *Turner*/*Finley* no-merit letter and requested to withdraw from representation. The PCRA court conducted another hearing, on April 28, 2020, after which it granted Attorney Ferry's application to withdraw from representation. Additionally, the PCRA court scheduled an evidentiary hearing for July 14, 2020, to decide the PCRA claims contained in Persaud's October 14, 2019, PCRA petition and the supplemental issues in Persaud's April 1, 2020, motion for leave to proceed *pro se*. The PCRA court expressly informed Persaud that any claims not contained within those filings would not be heard without proper leave from the court. *See* N.T. Motion to Withdraw Hearing, 4/28/20, at 11.

On July 9, 2020, Persaud filed a *pro se* notice of waiver in which he stated that he "confidently rests his argument for PCRA relief on that set forth in his petition." *See* Notice of Waiver, 7/9/20, at 1-4. Additionally, Persaud indicated that he would not be prepared for oral argument on July 14, 2020, and that he could not provide a list of witnesses because he had not yet received discovery, despite a formal request. *Id.* Persaud then filed another *pro se* PCRA petition, without leave from the PCRA court, in which he purported to amend his previous petition.

On July 14, 2020, the PCRA court conducted a PCRA hearing, after which it granted Persaud additional time to prepare his arguments and secure

witnesses. Subsequently, on October 8, 2020, the PCRA court conducted another PCRA hearing, after which it denied Persaud's claims.

Persaud has filed a timely, *pro se*, notice of appeal[11] and a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Persaud raises the following claims for our review:

1. Did the PCRA court abuse its discretion and deny [Persaud] the rights of petition and access to the courts and due process of law guaranteed by the United States and Pennsylvania Constitutions throughout the course of his PCRA proceedings; and, if so, did the PCRA court demonstrate the probability that the court was biased?

2. Was [Persaud] entitled to relief on the claims raised by him in his PCRA petition and at his evidentiary hearing?

3. Did the provision of [s]ection 9545(a) of the PCRA cause the denial of [Persaud]'s right to be heard by a fair and impartial tribunal guaranteed by the United States and Pennsylvania Constitutions; and, if so, does this provision of the PCRA present a constitutionally intolerable risk of bias on the part of PCRA courts adjudicating the fairness and constitutionality of their own trial proceedings under the [d]ue [p]rocess [c]lause of the United States Constitution?

4. Do the protections accorded by the [d]ouble [j]eopardy [c]lauses of the United States and Pennsylvania Constitutions

_____

[11] On October 26, 2020, Persaud filed his *pro se* notice of appeal, which purported to appeal from the October 8, 2020, order denying his PCRA petition. **See** Notice of Appeal, 10/8/20. This Court issued a rule to show cause directing Persaud to explain why his appeal should not be quashed pursuant to Pa.R.A.P. 301, because the October 8, 2020 order did not appear in the docket. **See** Rule to Show Cause, 2/4/21, at 1. Persaud, *pro se*, filed a response which included a copy of October 8, 2020 order. **See** Response, 2/12/21, at 7. Our review of the record reveals that the trial court's denial of Persaud's PCRA petition is dated October 8, 2020, but was, for reasons unknown, not time-stamped until November 17, 2020. **See** Order, 10/8/20, at 1. Accordingly, Persaud's notice of appeal from the October 8, 2020 order is timely, despite the delayed time-stamp.

attach to [Persaud]'s case by reason of the deliberate constitutional violations described herein?

Brief for Appellant, at 3.[12]

> We review an order [denying] a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. This Court may affirm a PCRA court's decision on any grounds if the record supports it. We grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Further, where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary.

*Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa. Super. 2012) (citations omitted).

Persaud's first and third claims both assert that the PCRA court exercised judicial bias against Persaud and, accordingly, we address them together. In Persaud's first claim, he contends that the PCRA court acted improperly by requiring Persaud to represent himself while he was represented by Attorney Ferry. Brief for Appellant, at 18-24. Persaud argues that the PCRA court

_____

[12] We note that Persaud's brief is replete with violations of Pa.R.A.P. 2116(a). ***See*** Pa.R.A.P. 2116(a) ("The statement of questions involved must state concisely the issues to be resolved . . . [and] will be deemed to include every subsidiary question fairly comprised therein. No question will be considered unless it is **stated in the statement of questions involved or is fairly suggested thereby**.") (emphasis added). We could find Persaud's claims waived, however, we are nevertheless able to discern his general claims of judicial bias and ineffective assistance of counsel and decline to find waiver of those claims on this basis.

engaged in "abusive conduct." *Id.* at 24. Persaud claims that the PCRA court continuously badgered him during PCRA hearings, and ignored that Persaud, as a *pro se* defendant, had limited access to the prison's law library during the COVID-19 pandemic. *Id.* at 24-27. Persaud posits that the PCRA court's behavior forced him "to file a hastily handwritten, still incomplete, amended PCRA petition[.]" *Id.* at 27. Persaud argues that, at the July 14, 2020, and October 8, 2020, PCRA hearings, the PCRA court acted as a Commonwealth attorney and forced him to rest his "claims and argument upon the information set forth in his amended PCRA petition." *Id.* at 27-28. Persaud contends that the PCRA court was aware of his "dependen[ce] upon legal assistance to pursue post-conviction relief, [but] the court disregarded any consideration of fundamental fairness." *Id.* at 28. Persaud argues that the PCRA court engaged in a "deliberate effort to deny [] Persaud due process of law." *Id.* at 29.

In his third claim, Persaud argues that "[t]hroughout the course of his PCRA proceedings", the PCRA court evidenced such a deep-seated antagonism towards [] Persaud and unfavorable disposition towards his attempt to seek [PCRA] relief[.]" *Id.* at 62. Persaud asserts that he is a "professional latin/urban hip-hop/rap music entertainment artist who records and performs under the moniker 'Montana Millz[.]'" *Id.* at 63. Persaud contends that his arrest was widely publicized by the Commonwealth in Lebanon County, which "taint[ed] a[ ]jury pool already distinctly biased against [] Persaud racially,

culturally, and socially." *Id.* Persaud contends that Lebanon County is a rural, conservative, and predominantly white area, and its prosecution of him was driven "primarily by song lyrics and music videos that offended the sensibilities of both police and prosecutor, rather than anything even remotely resembling actual evidence." *Id.*

Persaud further argues that the PCRA court took every chance to "harass, intimidate, and obstruct" him in his attempts to effectively present his claims at the PCRA hearing. *Id.* at 66. Persaud claims that the PCRA court "deliberately disregarded virtually every rule of criminal procedure applicable to [PCRA] proceedings [and effectively] den[ied] [] Persaud any semblance of due process of law." *Id.* Persaud argues that the PCRA court then impermissibly dismissed or passed over numerous claims "in order to protect the perjurous [*sic*] police office-witnesses who testified falsely . . . at trial." *Id.* at 67. Additionally, Persaud argues that the PCRA court intentionally mocked him by calling him by his wife's surname, "Mr. Irizarry," at the PCRA hearing. *Id.* at 38. Persaud contends that the "tenor of those references, and lack of apology or corrective statements . . . made clear [the] court's contempt for [Persaud]." *Id.*

These issues sound in a claim of judicial bias, which is a violation of due process. *Commonwealth v. McLaughlin*, 240 A.3d 980, 983 (Pa. Super. 2020). An issue challenging the impartiality of a judge, "is an attack upon the truth-determining process, a process that logically includes collateral attacks

on the judgment of sentence." ***Commonwealth v. Koehler***, 229 A.3d 915, 931 (Pa. 2020) (citing ***Commonwealth v. Burkett***, 5 A.3d 1260, 1275 (Pa. Super. 2010) ("The PCRA process, although not directly related to an adjudication of guilt, is part of the truth-determining process")). Generally, a party alleging judicial bias bears the burden of producing evidence to establish bias, prejudice, or unfairness, "which raises a substantial doubt as to the jurist's ability to preside impartially." ***Commonwealth v. Watkins***, 108 A.3d 692, 734 (Pa. 2014).

However, "simply because a judge rules against a defendant does not establish any bias on the part of the judge against that defendant." ***Commonwealth v. Travaglia***, 661 A.2d 352, 367 (Pa. 1995). "Along those same lines, a judge's remark made during a hearing in exasperation at a party may be characterized as intemperate, but that remark alone does not establish bias or partiality." ***Commonwealth v. McCauley***, 199 A.3d 947, 951 (Pa. Super. 2018) (citation omitted). "In contrast, it is appropriate for a judge to recuse[, for example,] when the judge has publicly on numerous occasions expressed views about sentencing a class of defendants, ignoring the trial court's obligation to impose individual sentences on defendants." ***Id.*** (citation omitted). "Similarly, we may consider the cumulative effect of a judge's remarks and conduct in multiple cases, even if no single act creates an appearance of bias or impropriety." ***Commonwealth v. Rhodes***, 990 A.2d 732, 748-49 (Pa. Super. 2009) (citation omitted).

Our review of the record does not support Persaud's claim of judicial bias. First, the record reveals that Persaud wished to proceed *pro se* and was not "forced" to do so by the PCRA court. **See** N.T. Application to Withdraw Hearing, 4/28/20, at 4-8 (Persaud indicating to PCRA court he wished to proceed *pro se*); PCRA Court Opinion, 3/1/21, at 4-9 (outlining Persaud's numerous *pro se* filings despite being represented by counsel, and Persaud's desire to proceed *pro se*).

Additionally, to the extent that Persaud argues the PCRA court's comments were inappropriate and demonstrated bias, we disagree. The PCRA court expressed exasperation at Persaud's lack of witnesses, despite Persaud repeatedly stating that he intended to call witnesses. **See** N.T. Application to Withdraw Hearing, 4/28/20, at 9-15 (wherein PCRA court indicated it would grant Attorney Ferry's application to withdraw, and asked Persaud what, if any, witnesses Persaud intended to call at subsequent hearings); N.T. PCRA Hearing, 7/14/20, at 19-28 (PCRA court and Persaud again discussing witness list and how to subpoena witnesses); **Id.**, 10/8/20, at 3-5 (Persaud stating he intended to call no witnesses and would rest on his arguments). Further, the PCRA court again expressed exasperation at the lack of clarity in Persaud's PCRA issues, where the PCRA court had expressly ordered Persaud to file a "concise[,] single-page" list of issues on which the court could conduct a hearing. **See id.**, 7/14/20, at 19-28 (PCRA court instructing Persaud to file concise single-page list of issues, as well as list of witnesses he intends to

call); *see also id.* (Persaud indicating he understood PCRA court's orders). However, despite this order, Persaud wrote a 21-page document, which he failed to serve upon the PCRA court. *See id.*, 10/8/20, at 3-5. Nevertheless, the PCRA court still conducted a hearing on Persaud's claims and addressed each one in turn. *Id.* at 5-71. Indeed, despite Persaud's arguments to the contrary, the record reveals that Persaud repeatedly failed to comply with the PCRA court's orders, but the PCRA court still afforded him two PCRA hearings.

Regarding Persaud's contention that the PCRA court mocked him by referring to him as "Mr. Irizarry," the PCRA court addressed this claim as follows:

> At no point did the undersigned jurist ever belittle or mock [Persaud]. In fact, both the Commonwealth and the Court went above and beyond to assist the *pro se* [Persaud] during his [h]earing[s] by providing documents he referred to and offering them into evidence on his behalf[.] A review of the transcript indicates that [Persaud] was mistakenly referred to as Mr. Irizarry only four (4) times throughout the entire [h]earing, during moments of both confusion and simultaneous talking. [The court] advised [Persaud] multiple times that it was inappropriate for him to raise claims on behalf of [] Irizarry at his own [e]videntiary [h]earing as she was a part of her own legal proceedings in the case, *Commonwealth v. Tiffany V. Irizarry*, Case No. CP-38-CR-1987-2016.

PCRA Court Opinion, 3/1/21, at 38.

Our review of the transcripts confirms the PCRA court's determinations. Indeed, all of the incidents in which Persaud was referred to as "Mr. Irizarry" occurred during the discussions about his wife, Ms. Irizarry, while more than one party was speaking at the same time. *See* N.T. PCRA Hearing, 10/8/20,

at 10, 25.  We discern no bias and, thus, we conclude that Persaud's claim lacks merit.[13]

In his second claim, Persaud raises approximately 10 sub-issues, which we shall address individually.

In his first sub-issue, Persaud argues that the PCRA court erred in conducting his PCRA hearings via video conference without colloquy or waiver of his right to appear.  Brief for Appellant, at 30.  Persaud acknowledges that he had previously waived his right to appear on July 9, 2020, but contends that this waiver is inapplicable.  *Id.* at 30-31.  Persaud contends that the PCRA court forced him to represent himself via video conference from prison, without an attorney, and denied him access to the courts, amounting to "an *ex parte* proceeding."  *Id.* at 31.  Persaud asserts that he was subjected to more "deprivatory [*sic*]" conditions than those in *Powell v. Alabama*, 287 U.S. 45 (1932).[14]

_____

[13] To the extent that Persaud asserts that the jury was biased against him through the Commonwealth's alleged publicizing of this case, we find this claim waived.  Persaud did not raise this claim in his underlying PCRA petition, nor did he raise it before the PCRA court at any of the hearings.  *See* Pa.R.A.P. 302(a) ("issues not raised in the lower court are waived and cannot be raised for the first time on appeal").

[14] We briefly note that in *Powell*, Alabama sprinted through legal proceedings to convict nine black youths of raping two white women.  During these "proceedings," three trials took a total of one day, and all nine youths were sentenced to death.  While the youths were appointed counsel, the attorneys did not consult with their clients, and did essentially nothing but physically appear at the trial.  Ultimately, the Supreme Court of the United States
*(Footnote Continued Next Page)*

- 12 -

At the outset, we note that this claim does not appear in Persaud's PCRA petition or his amended PCRA petition, nor did Persaud make a timely objection to his appearance via video conference. Indeed, this claim first appears in his appellate brief and, accordingly, it is waived.[15] **See Commonwealth v. Lauro**, 819 A.2d 100, 103 (Pa. Super. 2003) (citation omitted) (stating that "issues not raised in a PCRA [p]etition cannot be considered on appeal"); Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.")

In Persaud's second sub-issue, he argues that the PCRA court erred in denying his "right to raise the constitutional violations committed by police and the Commonwealth against his wife, Tiffany Irizarry, under the doctrine of third-party standing[.]" Brief for Appellant, at 32. Persaud contends that the PCRA court "summarily dismissed" his claim, and that he was "entitled to the right of third-party standing." **Id.** at 32-33.

Preliminarily, Persaud fails to develop this claim for our review. In his argument, Persaud fails to cite to the PCRA, and his argument is devoid of any citations to the record. **See** Pa.R.A.P. 2119(a) (providing that appellant's

_____

determined that the defendants had been denied due process, because they had not been given reasonable time and opportunity to secure counsel in their defense. **Id.** at 70.

[15] Moreover, as noted **supra**, this question is not included in Persaud's statement of questions involved and, thus, is waived for that reason as well. **See** Pa.R.A.P. 2116(a).

- 13 -

J-A01041-22

argument shall include "such discussion and citation of authorities as are deemed pertinent"); ***Commonwealth v. Johnson***, 985 A.2d 915, 924 (Pa. 2009) ("where an appellate brief fails to . . . develop the issue in any [] meaningful fashion capable of review, that claim is waived"). Accordingly, Persaud's second sub-issue is waived.

In his third sub-issue, Persaud argues that the police lacked probable cause to arrest his wife, Irizarry, and thus lacked the requisite probable cause to conduct the subsequent search of her hotel room. ***Id.*** Persaud asserts that the PCRA court erred in denying this claim and further claims that it did not afford him the chance to argue this claim at the PCRA hearing. ***Id.*** at 33-37.

> The PCRA court addressed Persaud's claim as follows:
>
> [Persaud] claims that the arrest, detention and searches incident thereto with regard to his wife, [] Irizarry[,] were "based solely on the fact that she is Hispanic, was in the physical company of and shared a marital relationship with [] Persaud[,] and refused to consent to a police search of her hotel room at the time of her arrest, and police had no probable cause or reason to believe they had probable cause to arrest, detain, and conduct searches of her person, papers, effects, and hotel room incident thereto, and only did so as a pretext to gain entrance to [] Irizarry's hotel room."
>
> The Commonwealth [] properly objected to this claim[,] as it related to the arrest of [] Irizarry and was not appropriate at [Persaud's] own PCRA [h]earing. At the October 8, 2020[,] PCRA [h]earing, [Persaud] raised this claim on behalf of [] Irizarry and was again advised by the [c]ourt that the claim was without merit as it was a claim being brought on behalf of another.
>
> Regardless, the [c]ourt still heard [Persaud's] argument in full on this claim at his hearing. [Persaud] argued that the search warrant was facially insufficient since it indicated that the room

- 14 -

was being shared by [Persaud] and his wife [] and [Persaud] claimed that no facts or circumstances support that "conclusionary assertion." [Persaud] also claimed the search warrant lacked probable cause for the arrest of [] Irizarry.

[Persaud], who reads and writes the English language, conceded at his [PCRA] hearing that he had received a copy of the search warrant near the time the search of the hotel room occurred and had a chance to review it then, but failed to make any issue of the search warrant prior to trial or prior to any post-sentence motions and only first raised any claims related to the search warrant upon filing his PCRA [p]etition. As [Persaud] failed to raise this issue prior to [the] PCRA [p]etition, the [c]ourt concluded this issue ha[d] been waived.

To the extent the issue has not been previously waived, upon reviewing the four corners of the document, [the court found] there is sufficient probable cause contained within the search warrant to justify the search of the hotel room.

\* \* \*

The [c]ourt noted a paragraph of the search warrant, in particular, and read it into the record to punctuate that the totality of the circumstances test had been fully met in this case and [Persaud]'s claim is without merit.

> On October 28, 2016, Detective Lawrence Minnick, Detective Ryan Mong, and Sergeant Brett Hopkins, working in an undercover capacity[,] traveled to the Days Inn Lebanon[,] located at 625 Quentin Road[,] to make a controlled buy of heroin from [] Persaud. Prior to the drug transactions, the detectives traveled to the area of 625 Quentin Road to conduct surveillance. During the controlled buy, Sergeant Hopkins gave the money directly to Persaud and Persaud gave the heroin directly to Sergeant [] Hopkins. This drug transaction was arranged through Sergeant Hopkins placing a telephone call to telephone number (857)-258-7637. Also present for the drug transactions was a Hispanic female later identified as [] Irizarry. . . . Shortly after the drug transaction, detectives had contact with Persaud and Irizarry and placed [] both of them under arrest. . . . During the search of Persaud's person, he was found in possession of two cellular telephones, one [of]

- 15 -

which was used to arrange the drug transaction, $300 in official Drug Task Force funds, $972 in U.S. currency, ten pink[-]in[-]color glassine baggies containing suspected heroin, T.D. Bank debit Visa card with the name Michael Persaud, a New York state driver license displaying the name/picture Michael Persaud, a Wells Fargo deposit slip with the name Michael Persaud printed on it, and a Days Inn electronic key card. . . . It was determined that the key card was for Room 409 with registration [to Irizarry.]

[N.T. PCRA Hearing, 10/8/20, at] 13-14.

As such, to the extent that the issue had not been previously waived, the [c]ourt found that sufficient facts were established that evidence of a crime would be found. Thus, the search warrant was valid.

PCRA Court Opinion, 3/1/21, at 14-16 (some citations omitted).

Our review of the record confirms the PCRA court's determinations. *See*

*Ford*, *supra*. Additionally, despite Persaud's claims to the contrary, the

record reveals that Persaud *was* afforded an opportunity to plead his claims,

but he chose to rest on his petitions. *See* N.T. PCRA Hearing, 10/8/20, at 5-

71. Accordingly, Persaud's claim lacks merit.

In his fourth sub-issue, Persaud contends that the search warrant was

facially deficient and invalid. Brief for Appellant, at 37-38. Persaud, relying

on his third sub-issue above, contends that the search warrant was "obtained

by means of illegal police misconduct . . . and, thus, tainted under the fruit of

the poisonous tree doctrine[.]" *Id.* at 37. Further, Persaud contends that the

search warrant was based "substantially on false statements and

misstatements of material fact made intentionally and knowingly by the

affiants to the warrant with reckless disregard for the truth." *Id.* at 37-38.

Persaud asserts that, during argument on this claim, the PCRA court began "mockingly referring to him as 'Mr. Irizarry[.]'" **Id.** at 38. Persaud argues that he was forced to present this claim "from memory alone," which put "the ignorant, learning and mentally disabled [] Persaud at a substantial disadvantage." **Id.** at 38-39. In support of this assertion, Persaud argues that he was not permitted to present witness testimony to support his claim. **Id.** at 37-40.

Persaud additionally claims that the affidavit of probable cause did not include "particular facts and circumstances . . . to justify the affiants' bare conclusion that [] Persaud was the owner, occupant, possessor[,] or shared occupancy of Days Inn Room #409." **Id.** at 40. Persaud further asserts that Irizarry was accused of no criminal conduct and her "mere association" with Persaud "did not constitute probable cause for a search warrant of the hotel room in which she was registered as the sole occupant." **Id.**

Preliminarily, as discussed **supra**, the record does not support Persaud's contentions that he was "forced" or otherwise "compelled" to proceed to a PCRA hearing without witnesses. Rather, the PCRA court postponed the PCRA hearing for the purpose of giving Persaud time to develop his arguments and prepare for the evidentiary hearing. Nevertheless, Persaud did not present any witnesses at the PCRA hearing. Instead, Persaud admitted the search warrant and the affidavit of probable cause as exhibits and then presented argument about the alleged deficiencies. **See** N.T. PCRA Hearing, 10/8/20,

at 5-71. Moreover, our review of the record supports the PCRA court's determinations and conclusions, highlighted above, and therefore, Persaud's claim lacks merit. **See** PCRA Court Opinion, 3/1/21, at 14-16.

In his fifth sub-issue, Persaud argues that his trial counsel rendered ineffective assistance of counsel by failing to challenge the search warrant as invalid. Brief for Appellant, at 42-44.

Counsel is presumed to be effective, and "the burden of demonstrating ineffectiveness rests on [the] appellant." **Commonwealth v. Rivera**, 10 A.3d 1276, 1279 (Pa. Super. 2010).

> To satisfy this burden, an appellant must plead and prove by a preponderance of the evidence that[:] (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness there is a reasonable probability that the outcome of the challenged proceeding would have been different. Failure to satisfy any prong of the test will result in rejection of the appellant's ineffective assistance of counsel claim.

**Commonwealth v. Holt**, 175 A.3d 1014, 1018 (Pa. Super. 2017) (internal citations omitted).

Generally, counsel's assistance is considered effective if he chose a particular course of conduct that had some reasonable basis designed to effectuate his client's interests. **Commonwealth v. Ali**, 10 A.3d 282, 291 (Pa. 2010). Where matters of strategy and tactics are concerned, "[a] finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success

substantially greater than the course actually pursued." ***Commonwealth v. Colavita***, 993 A.2d 874, 887 (Pa. 2010) (quotation marks omitted). Further, to demonstrate prejudice, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." ***Commonwealth v. King***, 57 A.3d 607, 613 (Pa. 2012). "[A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceedings." ***Ali***, 10 A.3d at 291.

As discussed ***supra***, Persaud's claim lacks arguable merit and, thus, counsel could not have been ineffective for failing to raise that claim. ***See Holt***, ***supra***.

In his sixth sub-issue, Persaud argues that the criminal complaint was facially deficient and invalid. Brief for Appellant, at 44. Persaud contends that the allegations against him were based upon information provided by two confidential informants (CI), that the affiants mysteriously were able to identify Persaud despite never having seen him before, and the statements in the affidavit did not form "any basis for a probable cause determination." Brief for Appellant, at 44-45. Persaud argues that his trial counsel rendered ineffective assistance in failing to raise this challenge. ***Id.*** at 44-47.

At the PCRA hearing, trial counsel testified, regarding the criminal informants, as follows:

Q: And you as his criminal counsel, would you have wanted to delve into who these informants were or why they did not testify at trial?

A: No

Q: Why not?

A: If they were not brought forward as evidence against my client, I would typically not want to open the door for evidence as to his alleged drug activities, how these individuals knew him, what they may or may not have directly observed of this particular [d]efendant. So I'm not going to open the door to have any additional evidence potentially offered against my client.

Q: And from your experience, when an informant does not testify at trial, nothing they said to police comes into evidence; is that correct?

A: That is correct.

N.T. PCRA Hearing, 10/8/20, at 56-57.

Trial counsel articulated a reasonable basis for not delving into the criminal informants. *See id.*; *Holt*, *supra*. Additionally, no criminal informants testified at Persaud's trial, nor was any information provided by criminal informants admitted into evidence or presented to the jury. Moreover, Persaud does not present an alternative with a "substantially greater" chance of success. *See Colavita*, *supra*. Thus, trial counsel had a reasonable basis for not pursuing this claim, and Persaud is entitled to no relief.

In his seventh sub-issue, Persaud contends that the Commonwealth violated his right to due process from the time of his arrest and throughout his criminal proceedings. Brief for Appellant, at 47-52. Persaud points out

alleged inconsistencies, such as the fact that the police claimed not to know who he was, but knew to investigate "Montana Millz," or an individual named "Ricky." *Id.* Additionally, Persaud contends that, on one incident, Detective Minnick "happened to be driving down the street and spotted [] Persaud standing there; whereupon, Det[ective] Minnick took [] surveillance photos of Persaud." *Id.* at 51. Persaud contends that it was clear the police knew who they were investigating from the beginning, and, thus, contends his right to due process was violated. *Id.*

Preliminarily, we conclude that Persaud has waived this claim. It is not this Court's duty to act as appellant's counsel. *See Commonwealth v. Hardy*, 918 A.2d 766, 771 (Pa. Super. 2007) (explaining appellant's briefing requirements and duties to "present arguments that are sufficiently developed for our review. . . . This Court will not act as counsel and will not develop arguments on behalf of an appellant."). Moreover, despite Persaud's five-page discussion of this claim, it is entirely unclear how his claim sounds in due process or equal protection. Additionally, Persaud provides us with no relevant authority. *See Johnson*, *supra*. Rather, Persaud's entire argument appears to dovetail with his judicial bias argument that the police, district attorney, and entire county of Lebanon were engaged in a conspiracy to

investigate him as a non-white hip-hop musical entertainment artist.[16] Accordingly, we conclude that Persaud has waived this claim.

In his eighth and ninth sub-issues, which we address together, Persaud claims that the Commonwealth violated **Brady**[17] and suppressed evidence. Brief for Appellant, at 52-56. Persaud contends that the Commonwealth willfully suppressed the identity of the CIs that the police relied upon when they began investigating Persaud. **Id.** at 52. Additionally, Persaud alleges that the Commonwealth suppressed two months of photo and video surveillance of [] Persaud, conducted by police. **Id.** at 53. Persaud posits that the PCRA court "cleverly dodged" the relevant facts in its opinion. **Id.** at 55. Additionally, Persaud claims the PCRA court acted improperly when it put "[Persaud] to the task of pointing to the record or producing evidence or witness testimony in support of his claims from a prison video conference room hundreds of miles distant from the courtroom where his hearing was taking place[.]" **Id.**

Our Supreme Court has explained that

_____

[16] Furthermore, we observe that even the PCRA court, after multiple petitions and several hearings, was unable to discern what Persaud intended to argue in this claim. **See** PCRA Court Opinion, 3/1/21, at 21-22 (PCRA court concluding that Persaud was "unable to provide any facts to support []his assertion and it is **unclear whether or how this assertion, even if proven true, would establish any due process or equal protection violation.**") (emphasis added).

[17] **Brady v. Maryland**, 373 U.S. 83 (1963).

in order to establish a *Brady* violation, a defendant must show that: (1) the evidence was suppressed by the state, either willfully or inadvertently; (2) the evidence was favorable to the defendant either because it was exculpatory or because it could have been used for impeachment; and (3) the evidence was material in that its omission resulted in prejudice to the defendant. However, the mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish materiality in the constitutional sense. Rather, evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Commonwealth v. Williams*, 168 A.3d 97, 109 (Pa. 2017) (citations, quotation marks, and brackets omitted). Further, "[t]o obtain a new trial based on the Commonwealth's failure to disclose evidence affecting a witness's credibility, the defendant must demonstrate that the reliability of the witness may be determinative of the defendant's guilt or innocence." *Commonwealth v. Tharp*, 101 A.3d 736, 747 (Pa. 2014).

Throughout his argument, Persaud makes no effort to satisfy the three prongs of *Brady*. Other than baldly claiming that the alleged evidence was willfully suppressed, Persaud fails to satisfy any of the three *Brady* prongs and, accordingly, no relief is due.[18]

---

[18] Additionally, our review of the record reveals that Persaud presented no testimony or other evidence, at the PCRA hearing or in his petitions, that satisfies any of the *Brady* prongs. Thus, Persaud's claim that the PCRA court erred in requiring Persaud to satisfy his burden of proof as the petitioner, is of no moment.

In his tenth sub-issue, Persaud argues that the PCRA court, the Commonwealth, and his trial counsel colluded to deny his ineffective assistance of counsel claims. Brief for Appellant, at 56. Persaud asserts that prior counsel's ineffectiveness "could only have been deliberate, and done in collusion with the Commonwealth and trial/PCRA court." *Id.* Persaud incorporates all of the above sub-issues as "proof" of his counsel's ineffectiveness. *Id.* at 57. Persaud contends that his trial counsel's entire defense strategy was to "show up on the day of his trial and go with the flow." *Id.* at 58. Additionally, Persaud contends that trial counsel did not effectively investigate his case, nor did he effectively cross-examine the detectives at trial. *Id.* at 59-62.

Preliminarily, as all of Persaud's above-mentioned sub-issues are either meritless or waived, none of them can now grant him relief under the guise of ineffective assistance of counsel. *See Holt*, *supra*. Additionally, at the PCRA hearing, trial counsel testified that Persaud was facing charges both here, and in Rhode Island, as part of a larger criminal drug dealing enterprise. N.T. PCRA Hearing, at 54-66. Trial counsel explained that, due to these circumstances, he often spoke with Persaud's Rhode Island defense team, as well as Persaud himself, regarding the best approach to Persaud's defense. *Id.* at 59-63. As part of these discussions, trial counsel and Persaud agreed that their best strategy would be to focus on the most serious of charges, corrupt organizations and dealing in proceeds. *Id.* at 64. Notably, Persaud

was acquitted, *inter alia*, of those offenses. Persaud did not cross-examine his trial counsel at the PCRA hearing. *Id.* at 66 (Persaud stating he had no questions for trial counsel).

Our review of the record reveals that trial counsel's strategy was not merely to "go with the flow" but rather was a calculated effort among himself, Persaud, and Persaud's Rhode Island defense team to counter the most serious offenses. *See* N.T. PCRA Hearing, 10/8/20, at 54-66. Indeed, Persaud did not present any evidence to the contrary in the PCRA petitions or at the hearings. Thus, we conclude that Persaud's claim lacks arguable merit. *See Holt*, *supra*. Similarly, we conclude that Persaud's claim regarding trial counsel's alleged failure to adequately cross-examine detectives lacks arguable merit, because, as highlighted above, Persaud presented no evidence whatsoever and did not cross examine his own trial counsel regarding that claim. *See* N.T. PCRA Hearing, 10/8/20, at 66; *Holt*, *supra*. Accordingly, these claims lack merit and Persaud is due no relief.[19]

In his final claim, Persaud asserts that double jeopardy has attached to his case and, therefore, his sentence must be vacated. *See* Brief for Appellant, at 3.

---

[19] Moreover, with regard to Persaud's *Brady* claims, he has failed to satisfy any of the three *Brady* prongs. *See Williams*, *supra*. Additionally, he fails to address how his trial counsel was ineffective in failing to pursue any of these claims. *See Holt*, *supra*.

- 25 -

At the outset, we note that this claim does not appear anywhere in Persaud's many PCRA petitions. In fact, Persaud's bald double jeopardy claim makes its first appearance in his Rule 1925(b) concise statement. Further, aside from mentioning this claim in his statement of questions involved section of his brief, Persaud provides no argument whatsoever regarding double jeopardy, nor does Persaud argue when or how it attached to any of his convictions. *See Hardy*, *supra*. Accordingly, we are constrained to conclude that Persaud has abandoned this claim on appeal.[20]

Order affirmed.

---

[20] We observe that this Court generally strives to address double jeopardy claims, as they challenge the legality of sentence. *See Commonwealth v. Robinson*, 931 A.2d 15, 21 (Pa. Super. 2007); *Commonwealth v. Staple*, 471 A.2d 847, 849 (Pa. Super. 1984) (double jeopardy claims cannot be waived, unless previously litigated). However, Persaud's appellate brief, with regard to his bald assertion of a double jeopardy violation, is so deficient that any analysis by this Court would be mere speculation as to the claim Persaud intended to raise. This Court will not act as counsel for Persaud, and we remind him that although he is *pro se*, he is still held to the same standards as a practicing attorney. *See Hardy*, *supra*; *Commonwealth v. Blakeney*, 108 A.3d 739, 765 (Pa. 2014) ("Although [] courts may liberally construe materials filed by a *pro se* litigant, *pro se* status confers no special benefit upon a litigant, and a court cannot be expected to become a litigant's counsel or find more in a written *pro se* submission than is fairly conveyed in the pleading."). Accordingly, we conclude that Persaud has abandoned this claim on appeal.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/15/2022